DANIEL G. McDERMOTT
TAMMY FASTMAN
MARSHALL, DENNEHEY, WARNER,
  COLEMAN & GOGGIN
*Attorneys for Plaintiffs*
Wall Street Plaza
88 Pine Street – 21ˢᵗ Floor
New York, NY  10005-1801

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------X

AMERICAN STEVEDORING, INC.,

                    Plaintiff,

          -  against -

NSCSA (AMERICA), INC. a/k/a NATIONAL
SHIPPING COMPANY OF SAUDI ARABIA
(AMERICA), INC.,

                    Defendants.

------------------------------------------------------X

**CV10-   1488**

10 Civ.

**COMPLAINT**

**WEINSTEIN, J.**

**POLLAK. M.J**

        Plaintiff, by its attorneys, MARSHALL, DENNEHEY, WARNER, COLEMAN &

GOGGIN, alleges upon information and belief, as follows:

## PARTIES

        1)     Plaintiff American Stevedoring, Inc. ("ASI") is and was at all times

hereinafter mentioned a domestic corporation, domiciled in Kings County, organized and

existing under and by virtue of the laws of the state of New York with an office and place

of business at 71 Hamilton Ave., Brooklyn, NY 11231.

27/1473224.v1

2)      ASI is a provider of cargo handling and stevedoring services and operates two container facilities, one  of which is located at Red Hook Marine Terminal ("Red Hook") in Brooklyn, New York.

3)      ASI brings this action on its own behalf and as agents and trustees on behalf of others, whose interests may ultimately appear and plaintiff is entitled to maintain this action.

4)      At all times hereinafter mentioned the defendant NSCSA (America), Inc. a/k/a National Shipping Company of Saudi Arabia (America), Inc. ("NSCSA") was and is acting as a carrier and the operator of the Motor Vessel, *SAUDI TABUK* ("*SAUDI TABUK*" or "the Vessel") and was and is engaged in national and international commerce and was and is a domestic corporation, domiciled in Richmond County, duly organized and existing under the laws of the state of New York with its principal executive office and place of business located at 400 E Pratt Street, Suite 400, Baltimore MD 21202 and with an agent for service of process located at Wohabe Law Offices, 405 Lexington Avenue, New York, NY 10174.

## JURISDICTION AND VENUE

5)      All and singular the following premises are true and constitute admiralty or maritime claims within the meaning of Rule 9 (h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of the United States and of this Honorable Court.

6)      Venue is proper, as both the Plaintiff and the Defendant are domiciled and incorporated within this forum, with the Plaintiff's place of business and the places where

- 2 -

all events giving rise to this action occurred lying and remaining within this forum's boundaries.

## AS AND FOR A FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

7)      On or about March 30, 2009, a shipment of Dinoseb Ethylbenzene ("the chemical"), contained inside a 20 ft tank container, bearing container number 888905-0 ("the tank") was delivered to NSCSA, its agents, employees, servants or subcontractors and was loaded by NSCSA, its agents, employees, servants or subcontractors onto the Vessel in Savannah, Georgia pursuant to bill of lading number NSAUTB140SVDA002 ("the bill of lading").

8)      According to the bill of lading, the chemical contained in tank ("the shipment") was said to weigh 43,324 pounds (19, 652 kilograms) and was intended for port to port transport from Savannah Georgia to Dammam, Saudi Arabia.

9)      The chemical is classified as a UN Toxic Liquid and is an inhalation hazard.

10)      Both the bill of lading and a placard on the tank listed the tank as containing a chemical with UN number 2626 and further categorized the chemical as toxic liquid, flammable Dinoseb Ethylbenzene.

11)      At the time of loading in Savannah, Georgia, the shipment had been placed on a portside pedestal immediately next to the water ("illegal position"), which is in conflict with Hazmat transporting regulations, which require all hazardous carrying tanks

and containers to be loaded in a location away from the ship's side to avoid water contamination in case of spillage.

12)      On or about April 3, 2009, ("time of arrival") the Vessel and the shipment thereon arrived at Red Hook.

13)      Pursuant to a certain contract and agreement between ASI and NSCSA ("the contract"), ASI was responsible for providing stevedoring, cargo handling and other Vessel dockage and freight related services ("vessel services") to NSCSA  at all times during which the Vessel was at Red Hook.

14)      Pursuant to the contract all vessel services, including hazmat, emergency and overtime services, were to be provided by ASI, its agents, employees, servants and subcontractors at specified rates, either per hour or per variety and type of service and all vessel services were to be paid for by NSCSA.

15)      ASI was not involved in and did not provide any vessel services to NSCSA at any time during which the Vessel was in any port or location other than Red Hook and in particular, did not provide any vessel services to NSCSA in Savannah, Georgia at which time and place NSCSA or its agents, employees, servants or subcontractors were fully responsible for the Vessel and its cargo and in particular, the shipment and for any and all services related to the Vessel, its stowage, the loading and unloading of cargo and in particular, the loading of the shipment.

16)      At the time of arrival of the Vessel at Red Hook or soon thereafter, the illegal position of the shipment was noticed by ASI, necessitating ASI to discharge the shipment and move it from its original location for the purpose of re-stowing the

- 4 -

shipment and placing the shipment in a legal position, in compliance with Hazmat regulations ("repositioning").

17)    The discharge of the shipment from its original, illegal position (for purposes of repositioning) was performed by lifting the tank by use of a crane and landing the tank on a "bombercart" or chassis without straps, located on the pier.

18)    After lowering the tank onto the bombercart, ASI crew observed liquid product leaking from the aft of the tank and further noticed a strong chemical odor ("discovery of the leak").

19)    Upon discovery of the leak, due to the chemical nature of the shipment and to avoid spillage into the channel, ASI had the tank lifted by the crane and placed directly on the pier, near the center of the terminal, away from the Vessel and the channel.

20)    Once lowered onto the pier, the tank was immediately inspected and it was determined that the leak was originating from bolts ("the bolts") located at the bottom of one of the tank's flanges ("the flange").

21)    The flange was connected to a manifold ("the manifold") with a fitted cap ("the cap") , meant to be secured to the manifold pipe and connected to the manifold by a chain, which was hanging loose from the manifold by its chain.

22)    Thereafter, the leak was immediately stopped by a member of ASI's crew who tightened the bolts with a spanner.

23)    After further inspection of the tank, it was noted that the manifold assembly was within the perimeter protected by the tank cradle, but that the forward section of the manifold was slightly flattened and rusted with its cap unsecured, indicating that the

- 5 -

manifold assembly was in a tender condition prior to the time of arrival of the Vessel at Red Hook.

24)     After ASI stopped the leak, it was necessary for ASI to call a Hazmat response team to clean up the spillage of the chemical and to transload the chemical into a new tank ("the new tank").

25)     Only a limited quantity of the chemical leaked from the tank and after transload, chemical contained in the new tank was found to weigh 58,540 pounds, 15,216 pounds over the weight listed for the chemical by NSCSA.

26)     In order for ASI to be able to perform vessel services safely and efficiently and pursuant to the  contract its agreement with ASI, NSCSA was obligated and had a duty to accurately label and/or placard all cargo on board the Vessel, provide accurate information regarding the contents, weight and details of all cargo loaded on board the Vessel.

27)     NSCSA failed to accurately label and/or placard the shipment, failed to provide accurate information regarding the contents, weight and details of the shipment and NSCSA failed to properly load and stow the shipment in compliance with applicable laws and regulations at the time of arrival of the Vessel at Red Hook, , in breach of the contract and in breach of its agreement with ASI.

28)     In order for ASI to be able to perform vessel services safely and efficiently and pursuant to the  contract its agreement with ASI, NSCSA was obligated and had a duty to ensure that that the cargo was properly loaded and stowed in compliance with applicable laws and regulations at the time of arrival of the Vessel at Red Hook and to

inspect and make safe NSCSA's tanks, containers and equipment and to ensure that NSCSA's tanks, containers and equipment on board the Vessel and/or to be handled by ASI were intact and in seaworthy condition.

29)   NSCSA failed to ensure that NSCSA's tanks, containers and equipment on board the Vessel and/or to be handled by ASI were intact and in a seaworthy condition and NSCSA instead shipped the tank and the shipment in a defective, broken and unseaworthy condition, in breach of the contract and in breach of its agreement with ASI.

30)   Pursuant to the contract and its agreement with NSCSA, ASI demanded payment for vessel services, including Hazmat services and other emergency services related to the shipment and the leak, as more fully described above.

31)   NSCSA refused and failed to pay ASI for the vessel services, in breach of the contract and its agreement with ASI.

32)   By reason of the foregoing, ASI has suffered damages in the amount of $51,332.11, none of which has been paid although duly demanded.

### AS AND FOR A SECOND CAUSE OF ACTION
(NEGLIGENCE)

33)   ASI repeats and realleges each and every allegation of paragraphs 1 through 32 as if fully set forth herein.

34)   NSCSA, its agents, employees, servants or subcontractors had actual and/or constructive care, custody and control of the Vessel and the shipment prior to the Vessel's arrival at Red Hook and NSCSA had a duty to ensure the seaworthiness the Vessel and the seaworthiness of the shipment and to ensure the safety of those who would

foreseeably be handling the shipment or who could be foreseeably affected by the shipment by safely and properly stowing and securing the shipment in compliance with all applicable laws and regulations at all times and in particular, at the time of arrival of the Vessel at Red Hook, and to inspect and make safe NSCSA's tanks, containers and equipment and to ensure that NSCSA's tanks, containers and equipment on board the Vessel and in particular, tanks, containers and equipment to be handled by ASI, were intact and in seaworthy condition.

35) NSCSA failed to properly load and stow the shipment in compliance with applicable laws and regulations at the time of arrival of the Vessel at Red Hook and NSCSA failed to ensure that that the shipment was intact and in a seaworthy condition and NSCSA instead shipped the tank and the shipment in a defective, broken and unseaworthy condition, in breach of its duties to ASI.

36) NSCSA, its agents, employees, servants or subcontractors had actual and/or constructive care, custody and control of the Vessel and the shipment prior to the Vessel's arrival at Red Hook and NSCSA had a duty ensure the seaworthiness the Vessel and the seaworthiness and of the shipment and to ensure the safety of those who would foreseeably be handling the shipment or who could be foreseeably affected by the shipment by accurately labeling and/or placarding the shipment and providing accurate information regarding the contents, weight and details of the shipment and in particular, NSCSA had a duty to provide ASI with accurate information regarding the weight and contents of the shipment.

- 8 -

37) NSCSA failed to accurately label and/or placard the shipment, failed to provide accurate information regarding the contents, weight and details of all the shipment in breach of its duties to ASI.

38) As a proximate result of the negligence and/or wrongful conduct of NSCSA, its agents, employees, servants or subcontractors, all without negligence or fault on the part of ASI or its agents, ASI has suffered damages in the amount $51,332.11, none of which has been paid although duly demanded.

**WHEREFORE**, American Stevedoring, Inc. prays:

1.    That a summons issue against Defendant, NSCSA (America), Inc. a/k/a National Shipping Company of Saudi Arabia (America), Inc., and any person claim or interest therein be cited to appear and answer the matters aforesaid, and

2.    That judgment be entered in favor of American Stevedoring, Inc. and against defendant, NSCSA (America), Inc. a/k/a National Shipping Company of Saudi Arabia (America), Inc. in the amount of $51,332.11, plus interest, costs and attorneys fees, and

3.    That this court grants American Stevedoring, Inc. such other and further relief as this Court deems just and proper.

Dated:      New York, New York
              April _/_, 2010

                                   MARSHALL, DENNEHEY, WARNER,
                                   COLEMAN & GOGGIN
                                   Daniel G. McDermott
                                   Tammy Fastman
                                   *Attorney for Plaintiff,*

BY:                                 
                                   TAMMY FASTMAN
                                   Wall Street Plaza
                                   88 Pine Street
                                   New York, New York  10005-1801
                                   (212) 376-6400
                                   Dgmcdermott@mdwcg.com
                                   Ttfastman@mdwcg.com
                                   (File:  19261.00185 DGM/TF)

- 10 -